HELEN BARRON vs. MICHAEL J. PUZO,
special administrator.[1]

Middlesex. March 4, 1993. - April 16, 1993.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Divorce and Separation*, Alimony, Modification of judgment. *Survival of Action*.

A complaint for modification seeking a new order for payment of alimony, filed approximately fourteen and one-half years after a former husband's final payment of alimony under a decree of divorce, did not survive the husband's death and should have been dismissed on the motion of the administrator of his estate. [56-57]

LIBEL for divorce filed in the Probate Court for the county of Middlesex on March 27, 1974.

A complaint for modification was filed on December 13, 1991, and a motion to dismiss was heard by *Edward J. Rockett*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Puzo* (*Michael L. Leshin* with him) for the defendant.

*Caren Z. Schindel* for the plaintiff.

GREANEY, J. We transferred this case to this court on our own motion to decide whether the complaint for modification filed by Helen Barron (Helen) in the Middlesex Division of the Probate and Family Court Department which sought a new order for the payment of alimony from her former husband, Selwyn Z. Barron (Selwyn), some fourteen and one-half years after Selwyn's final payment of alimony under their divorce decree, should have been dismissed upon Sel-

---

[1] Of the estate of Selwyn Z. Barron.

wyn's death. We conclude that Helen's modification action did not survive Selwyn's death and reverse the order denying the motion to dismiss the complaint brought by the defendant, the special administrator of Selwyn's estate.

The background of the case is as follows. On March 27, 1974, Helen and Selwyn were divorced. The divorce decree contained various provisions for alimony. These provisions included an order that Selwyn pay weekly alimony to Helen in a designated amount until July 1, 1976, and that alimony be extended for one additional year until June 30, 1977, if Helen had enrolled in college. The decree also required Selwyn to pay part of Helen's college tuition in two $1,000 installments, one on September 1, 1974, and the second on September 1, 1975. The decree went on to provide that its alimony provisions "shall represent the full and complete obligation of . . . [Selwyn] to pay alimony or support to . . . [Helen], and . . . [Helen] agrees to accept all of such payments in full satisfaction of [her] claim for alimony . . . ." Selwyn made all the payments required of him under the decree.

On December 13, 1991, about fourteen and one-half years after the termination of Selwyn's alimony obligations on June 30, 1977, Helen filed a complaint for modification in the Probate and Family Court seeking a new order for the payment of alimony. On December 23, 1991, an attorney who purported to act on behalf of Selwyn signed the return of service on Helen's complaint. Selwyn, who was terminally ill when Helen's complaint was brought, died on December 24, 1991, the day after the return of service was signed.

The defendant was subsequently appointed special administrator of Selwyn's estate. He moved to dismiss Helen's complaint for modification on the ground (as far as relevant to this appeal) that the complaint did not survive Selwyn's death. A judge of the Probate and Family Court Department denied the motion to dismiss. A single justice of the Appeals Court authorized the defendant to pursue an interlocutory appeal from the order denying the motion, and we transferred the appeal here for decision.

As a general rule, an order for the payment of alimony ceases with the death of the party obligated to pay it unless the decree or judgment provides otherwise or arrearages are due and unpaid. See *Cameron* v. *Cameron*, 307 Mass. 609 (1940); *Stone* v. *Duffy*, 219 Mass. 178, 182 (1914); *Barron* v. *Barron*, 28 Mass. App. Ct. 755, 760 (1990); C.P. Kindregan & M.L. Inker, Family Law and Practice § 882 at 469 (1990). See also *DuMont* v. *Godbey*, 382 Mass. 234, 235 (1981). In *Cameron* v. *Cameron*, *supra*, a complaint for modification seeking an award of alimony brought by a wife after her husband's death was held to have been properly dismissed. The court stated: "The [complaint] cannot be maintained since there is no nonstatutory right to alimony, and the statutes relating thereto 'contemplate proceedings . . . between living parties and the making of orders to operate prospectively in accordance with the existing financial condition of the parties . . . [and] do not justify orders or judgments made after the death of a necessary party, operating retroactively.' " *Id.*, quoting *Gediman* v. *Cameron*, 306 Mass. 138, 140-141 (1940). Similarly, "if either party dies during the pendency of the divorce action or before the judgment nisi becomes absolute, then the divorce action abates and no order for either property division or alimony . . . is possible." Kindregan & Inker, *supra*. See *Ross* v. *Ross*, 385 Mass. 30, 35 (1982). General Laws c. 208, § 37 (1990 ed.), governing complaints for modification limits the court's authority to a "judgment . . . which it might have made in the original action."

These principles indicate that the defendant's motion to dismiss Helen's complaint for modification should have been allowed. The alimony that had been ordered was limited and fixed, and had been paid by Selwyn in full long before the complaint for modification was filed. The decree of divorce was explicit that the payments ordered therein were in "full satisfaction of . . . [Helen's] claim for alimony." Any poten-

tial obligation for alimony that Selwyn might have had pursuant to G. L. c. 208, § 37, ended with his death.[2]

The order denying the defendant's motion to dismiss Helen's complaint for modification is reversed. A new order allowing that motion is to be entered.

*So ordered.*

---

[2]We reject Helen's arguments to the contrary. There is nothing in the language of G. L. c. 208, § 34 (1990 ed.), which would authorize her complaint for modification. The language therein relied upon by Helen (that on a complaint "brought at any time after a divorce" a court "may make a judgment for either of the parties to pay alimony to the other") has been applied to permit an alimony action to the extent that no provision for alimony was made at the time of divorce. See *Cherrington* v. *Cherrington*, 404 Mass. 267, 269 (1989). Section 34 does not indicate that a postdivorce claim for alimony, in the circumstances present in this case, survives the death of the potential obligor. Finally, Helen's reliance on *DuMont* v. *Godbey*, 382 Mass. 234 (1981), is misplaced. That case concerned an action for the division of property involving a divorce judgment containing an agreement for the payment of alimony and child support that might have survived the defendant husband's death. The *Dumont* case contains a general discussion of the survival of actions for alimony in the context of existing agreements which contemplate continued payments after the death of the responsible spouse. The divorce decree between Helen and Selwyn did not provide for alimony after Selwyn's death.